1   JOHN D. MUNDING
2   MUNDING, P.S.
  9425 N Nevada St., Ste 212
3   Spokane, WA 99218
  (509) 624-6464
4   john@mundinglaw.com
5
6   Attorneys for Debtor-in-Possession

7           UNITED STATES BANKRUPTCY COURT
      EASTERN DISTRICT OF WASHINGTON AT SPOKANE
8

9   In re                   No. 19-01492-FPC11

10   **TAMARACK AEROSPACE GROUP,**    Chapter 11
11   **INC.,**

                               **FIRST AMENDED PLAN OF**
12         Debtor.           **REORGANIZATION**

13
14   Proponent:
     •   Tamarack Aerospace Group, Inc.,
15         Debtor-in-Possession
16
  Dated: December 31, 2019.
17   Confirmation Hearing Date:  February 25, 2019
18
19   Prepared by:
20   John D. Munding
  Munding, P.S.
21   9425 N Nevada St., Ste 212
  Spokane, WA 99218
22   Attorney for Tamarack Aerospace Group,
23   Inc.
24
25
26

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

FIRST AMENDED PLAN OF REORGANIZATION- 1

19-01492-FPC11    Doc 171    Filed 12/31/19    Entered 12/31/19 08:45:51    Pg 1 of 38

# TABLE OF CONTENTS

I.      **INTRODUCTION**………………………………………………5

II.     **DEFINITIONS AND GENERAL PROVISIONS**………………………6

III.    **CLASSIFICATION OF CLAIMS AND INTERESTS**……………………10

**Section 3.1**          *Unclassified Claims*………………………………...…11

**Section 3.2**          *Classified Claims*………………………………………...11

IV.     **TREATMENT OF ALLOWED CLAIMS AND INTERESTS.**………………………………………………………13

**Section 4.1** *Unclassified*…………………………………………………14

**Section 4.2** *Classified Claims*……………………………………………15

       **Section 4.2.1**          *Treatment of Class 1 – TAGJET,LLC* ………15

       **Section 4.2.2**          *Treatment of Class 2 – Berkshire Bank*………15

       **Section 4.2.3**          *Treatment of Class 3 – DH Aeronautics...*………16

       **Section 4.2.4**          *Treatment of Class 4 – General Unsecured*….17

       **Section 4.2.5**          *Treatment of Class 5 – Wrongful Death*………17

       **Section 4.2.6**          *Treatment of Class 6 – Warranty/Grounding*….18

       **Section 4.2.7**          *Treatment of Class 7 Claim – Nicholas Guida...*18

       **Section 4.2.8**          *Treatment of Class 8 – Shareholder Interests...* 19

**Section 4.3** *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code* .19

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

FIRST AMENDED PLAN OF REORGANIZATION- 2

**V.    IMPLEMENTATION OF THE PLAN**………………………………………20

**Section 5.1** *Funding and Implementation*……………………………………20

**Section 5.2** *Exemption from Certain Transfer Taxes and Recording Fees*………20

**Section 5.3** *Effectuating Documents; Further Transactions*……………………..20

**Section 5.4** *Further Authorization*…………………………………………..21

**VI.    DISTRIBUTIONS UNDER THE PLAN**…………………………………21

**Section 6.1** *Disbursement Agent*.................................................................21

**Section 6.2** *Conditions to Disbursement*....................................................21

**Section 6.3** *Administrative / Priority Claims Distribution*…………………………21

**Section 6.4** *Classified Claims Distribution*……………………………………22

**Section 6.5** *Distributions of Cash*……………………………………………23

**Section 6.6** *Delivery of Distributions*......................................................23

**Section 6.7** *Unclaimed Funds and Interests*………………………………………24

**VII.    PROVISIONS REGARDING CORPORATE GOVERNANCE OF
REORGANIZED DEBTOR**………………………………………25

**Section 7.1** *Post-Petition Professionals and Management*.....................................25

**Section 7.2** *Administrative Claims Bar Date*…………………………………27

**VIII.  PROCEDURES FOR TREATING/RESOLVING DISPUTED
CLAIMS**……………………………………………………27

**Section 8.1** *Objections to Claims*.................................................................27

**Section 8.2** *No Distributions Pending Allowance*.....................................28

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

FIRST AMENDED PLAN OF REORGANIZATION- 3

**Section 8.3** *Estimation of Claims*..................................................................28

**Section 8.4** *Resolution of Claims Objections*............................................28

**IX.**   **DISALLOWED CLAIMS AND DISALLOWED INTERESTS**………..29

**X.**   **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**…..………29

**Section 10.1** *Pre-Petition Contracts and Leases*…………………………………30

**Section 10.2** *Post-Petition Contracts and Leases*…………………………………30

**XI.**   **CONTINUED PROSECUTION OF LITIGATION**………………..……30

**XII.**   **EFFECT OF PLAN ON CLAIMS AND INTERESTS**…………………31

**Section 12.1** *Revesting of Assets*..............................................................31

**Section 12.2** *Discharge of the Debtor*.......................................................31

**Section 12.3** *Release*………………..................................................................31

**Section 12.4** *Set-offs*………………...................................................................32

**Section 12.5** *The Effective Date*................................................................32

**XIII.**   **RETENTION OF JURISDICTION**………………………………………...33

**Section 13.1** *Retention of Jurisdiction*.....................................................33

**Section 13.2** *Alternative Jurisdiction*........................................................34

**Section 13.3** *Substantial Consummation*..................................................34

**Section 13.4** *Final Decree*.........................................................................35

**XIV.**   **MISCELLANEOUS PROVISIONS**………………………………………35

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

# I.  INTRODUCTION

This First Amended Plan of Reorganization modifies and supersedes for all purposes the prior Plan of Reorganization filed in this proceeding on September 23, 2019 (ECF No. 108). The First Amended Plan (the "Plan") is proposed by Tamarack Aerospace Group, Inc., a Washington corporation as the Debtor-in-Possession in the Chapter 11 Case (the "Debtor" or "Tamarack"). Tamarack is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Through submission of the Plan, the proponent seeks to put into place a mechanism through which this bankruptcy proceeding will achieve finality. The Plan is submitted pursuant to section 1129(a) of the Bankruptcy Code and Bankruptcy Rules 3016 and 3018. The Plan proposes a reorganization of Tamarack and distribution to creditors in accordance with priorities set forth in the Plan and consistent with the requirements of the Bankruptcy Code. In summary, the Plan is premised on the reorganization of the Debtor to be funded by:

1) The Debtor intends to utilize cash reserves and draw upon its credit line with TAGJET, LLC to fund Administrative, Priority, and Class 4 claims;

2) The Debtor will fund payments to Class 1, 3, and 7 with revenue generated through continued business operations over a series of years.

The Debtor projects that the Plan will be consummated, and creditors will be paid according to the terms of the Plan within approximately seventy-two (72) months of the Confirmation Date.

Accompanying the Plan is the First Amended Disclosure Statement (the "Disclosure Statement") which has been approved by the Court by way of Order Approving Amended Disclosure Statement for Chapter 11 Plan, Setting Deadlines, and Time for Confirmation Hearing as entered by the Court on December 19, 2019

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

("Order"). The deadlines concerning the Plan Confirmation Hearing, including deadline for filing of written acceptance or rejection of the Plan (balloting) has been set for February 7, 2020. All creditors entitle to vote on the Plan are strongly advised to review the Order served concurrently herewith.

Certain capitalized words or terms in the Plan are defined in Section 2 hereof entitled "Definitions."

**ALL CREDITORS, PARTIES IN INTEREST, AND EQUITY HOLDERS ARE STRONGLY ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT THE PLAN**

**II.     DEFINITIONS AND GENERAL PROVISIONS**

For purposes of the Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Section 2 of the Plan. Any term used in the Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. As used herein, the word "including" shall be construed to mean "including, without limitation," and the word "include" shall not imply any limitation.

**Section 2**   *Definitions*

2.1.   **"Administrative Expense"** means any expense in the Chapter 11 Case of the type defined in section 503(b) of the Bankruptcy Code and entitled to priority in Section 507(a) of the Bankruptcy Code, including all liabilities incurred by the Debtor in the operation of its business during the Chapter 11 Case, the actual and necessary costs and expenses of preserving the Estate, and Claims for professional services and reimbursement of expenses awarded under sections 330 and 331 of the Bankruptcy Code.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

2.2. **"Allowed"** as to a Claim means any Claim in the amount and of the classification set forth in the proof of such Claim that has been timely filed in the Chapter 11 Case, or in the absence of such proof, as set forth in the Debtor's Schedules of Liabilities filed in the Chapter 11 Case, unless: (i) such Claim has been listed in the applicable Schedule as disputed, contingent, or unliquidated, in which case such Claim shall be allowed only in such amounts and of such classification as is authorized by a Final Order of the Court; (ii) such Claim is Disputed; or (iii) such Claim has been paid in full, withdrawn, released, or otherwise deemed satisfied in full.

2.3. **"Assets"** means all property, as defined in section 541 of the Bankruptcy Code, of the Debtor's Estate, including all the Debtor's property interests, equity interest, effects (whether personal, tangible, or intangible), and Causes of Action, wherever situated as such properties exist on the Effective Date or thereafter.

2.4. **"Ballot"** means each of the ballet forms that are distributed with the Disclosure Statement to holders of Impaired under the Plan who are entitled to vote to accept or reject the Plan.

2.5. **"Bankruptcy Code"** means Title 11, United States Code, codified at 11 U.S.C. § 101, *et seq.*

2.6. **"Bankruptcy Rule"** or **"Bankruptcy Rules"** refer to the Federal Rules of Bankruptcy Procedure.

2.7. **"Berkshire" or "Berkshire Loan"** means Berkshire Bank and its loan to Tamarack which is secured by the 2001 Cirrus Design SR-22 Aircraft.

2.8. **"Chapter 11 Case"** means the Debtor's above-captioned bankruptcy proceeding, which the Debtor commenced by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code on the Petition Date and which is now pending in the Court.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

2.9. "**Claim**" means any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, or any other right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, arising by virtue of the rejection of an Executory Contract under the Plan, or otherwise. The term "Claim" includes all "claims" as defined in section 101(5) of the Bankruptcy Code.

2.10. "**Claims Objection Deadline**" has the meaning given to it in Section 8.1 hereof.

2.11. "**Court**" means the United States Bankruptcy Court for the Eastern District of Washington.

2.12. "**Confirmation**" means the entry by the Court of the Confirmation Order.

2.13. "**Confirmation Date**" means the date on which the Confirmation Order is entered on the docket by the Clerk of the Court.

2.14. "**Confirmation Hearing**" means the hearing before the Court held to consider Confirmation of the Plan and related matters under section 1128 of the Bankruptcy Code.

2.15. "**Confirmation Order**" means the Order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.16. "**Creditor**" means every holder of a Claim (whether or not such Claim is or becomes an Allowed Claim) and includes all "creditors" as defined in section 101(10) of the Bankruptcy Code.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

2.17.  **"Debtor"** has the meaning given to it in Article I hereof.

2.18.  **"Debtor-in-Possession"** means the Debtor, when exercising its rights, powers and duties under section 1107(a) of the Bankruptcy Code in this Chapter 11 Case.

2.19.  **"Disbursement Agent"** is the Reorganized Debtor which is designated and responsible for making disbursements to Creditors.

2.20.  **"Disputed"** as to a Claim means any Claim as to which any party in interest files an objection that has not been withdrawn or that is listed in the Debtor's Schedules as disputed and in either case has not been resolved by a Final Order.

2.21.  **"Effective Date"** means fourteen (14) days after the date of entry of the Confirmation Order.

2.22.  "**Estate**" means the estate created in the Chapter 11 Case under section 541 of the Bankruptcy Code.

2.23.  **"Executory Contract"** means every contract of the Debtor, or pertaining to property of the Debtor, excluding any unexpired lease of real property or equipment, which the Debtor has assumed or rejected, or is obligated to assume or reject, under section 365 of the Bankruptcy Code.

2.24.  **"Final Order"** means an order of any court that has been entered and: (i) the time for appeal from such entered order has expired with no appeal having been filed timely; (ii) any appeal from such entered order has been filed, but such order has not been stayed pending appeal; or (iii) any appeal from such entered order has been dismissed or finally determined.

2.25.  **"General Unsecured Claims"** means all Claims against the Debtor that are not (a) secured Claims, (b) Claims for Administrative Expenses, (c) Priority Claims, or (d) Equitable Claims.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

2.26. **"Impaired"** as to a Claim or class of Claims means a Claim or class of Claims that is Impaired as that term is defined in section 1124 of the Bankruptcy Code.

2.27. **"Interests"** means all shareholder interests and other ownership rights in the Debtor, including all "equity securities" of the Debtor as defined in section 101(16) of the Bankruptcy Code, whether known or unknown, recognized or unrecognized, disputed or undisputed.

2.28. **"Petition Date"** means July 1, 2019, the day on which the Debtor filed its voluntary petition with the Court commencing the Chapter 11 Case.

2.29. **"Priority Claim"** means a Claim entitled to priority pursuant to section 507(a) of the Code.

2.30. **"Reorganized Debtor"** means the Debtor on and after the Effective Date of the Plan.

2.31. **"TAGJET, LLC" or "TAGJET, LLC Loan Agreement"** means TAGJET, LLC and its secured post-petition loan, including loan agreements, with Tamarack.

2.32. **"Unimpaired"** as to any Claim or class of Claims means a Claim or class of Claims that is not impaired.

### III.    CLASSIFICATION OF CLAIMS AND INTERESTS

*Summary*

All Claims and Interests are classified under the Plan as set forth in this Article. At the time of Confirmation Hearing, any class that does not hold or contain an Allowed Claim (or a Claim temporarily or provisionally Allowed by the Court for voting purposes) will be deleted from the Plan with respect to voting on Confirmation of the Plan. A Claim or Interest shall be deemed classified in a particular Class only

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.

### Section 3.1    *Unclassified Claims*

#### Section 3.1.1    *Administrative Claims*

Claims for Administrative Expenses are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code. Claims for Administrative Expenses are Unimpaired, are not classified for purposes of voting on the Plan, and holders of Administrative Expense Claims are not entitled to vote on the Plan.

#### Section 3.1.2    *Priority Claims*

Priority Claims are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code. Priority Claims are Unimpaired, are not classified for purposes of voting on the Plan, and holders of Priority Claims are not entitled to vote on the Plan.

### Section 3.2    *Classified Claims*

#### Section 3.2.1    *Class 1 – Secured Claim of TAGJET, LLC*

Class 1 consists of the Allowed Secured Claim of TAGJET, LLC. Pursuant to the TAGJET, LLC Loan Agreement, TAGJET, LLC holds a valid, undisputed, perfected first priority security interest in specific Tamarack intellectual property.

#### Section 3.2.2    *Class 2 – Secured Claim of Berkshire Bank.*

Class 2 is comprised of the Allowed Secured Claim of Berkshire Bank. Pursuant to the Loan Documents, Berkshire Bank holds a valid, undisputed, perfected, first priority security interest in and lien on Tamarack's 2001 Cirrus Design SR-22 Aircraft. The Aircraft has been recently sold.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

### Section 3.2.3      *Class 3 – Claim of DH Aeronautics Notes 1 and 2*

Class 3 is comprised of the Allowed Unsecured Claims of DH Aeronautics arising from Notes 1 & 2 which total approximately $5,304,718.00.

### Section 3.2.4      *Class 4 – General Unsecured Claims*

Class 4 is comprised of the holders of General Unsecured Claims, to the extent such Claims are Allowed, other than Class 3, 5, 6, or 7. The Debtor estimates that Allowed Class 4 Claims will total less than $171,000.

### Section 3.2.5      *Class 5 – Wrongful Death Claims.*

Class 5 is comprised of the Claims of the Wrongful Death Claims of the Estate of Dale Davis, Estate of Sandra Johnson, and Estate of Wayne Estopinal, to the extent such Claims are Allowed. The Debtor disputes these claims. The Class 5 claims are limited, if allowed, to the limits of the Debtor's insurance policy. Class 5 claims will be litigated in the United States District Court. Class 5 Claims are more fully described in the Disclosure Statement. All Class 5 claims shall be prosecuted and litigated against Tamarack before the United States District Court for the Eastern District of Washington in accordance with the prior Order Granting Relief from Stay and Denying Motion for Waiver of FRPB 4001(a)(3) (ECF No. 98) and Order Designating Venue for Waiver of FRBP 4001(a)(3) (ECF No. 98) and Order Designating Venue for Wrongful Death Claims Pursuant to 28 U.S.C. §157(b)(5) (ECF No. 147).

### Section 3.2.6      *Class 6 – Warranty and Grounding Claims.*

Class 6 is comprised of warranty and grounding claims asserted by Tamarack's customers arising from or related to Winglet product or Airworthiness Directives. Class 6 Claims are disputed by the Debtor. The total amount of known and alleged Class 6 Claims total $1,948,986.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

**Section 3.2.7**     *Class 7 – Claim of Nicholas Guida Note.*

Class 7 is comprised of the Allowed Unsecured Claim of Nicholas Guida in the amount of $19,900.00.

**Section 3.2.8**     *Class 8 - Shareholder Interests.*

Class 8 is comprised of the existing Shareholder Interests in the Debtor. The recognized Stock or Interest holders of the Debtor are defined by shares of stock as held by individuals and entities, identified in Appendix C attached hereto. Shareholders of Class 8 shall retain their stock ownership in Tamarack post Confirmation. Shareholders of Class 8 shall not be entitled to receive any distribution under the Plan or from the reorganized Debtor until Classes 1 -7 Allowed Claims have been paid in full. Shareholders are restricted from selling or transferring their shares without first providing ninety (90) days advance notice to Tamarack. Tamarack shall have the first right of refusal to purchase Tamarack stock. If Tamarack chooses not to exercise this first right of refusal, all other non-selling shareholders shall have a right of first refusal to purchase the offered shares on a pro rata basis.

## IV.   TREATMENT OF ALLOWED CLAIMS AND INTERESTS.

The following is the description of the treatment proposed for the Claims and Interests by each Class of Creditors, Interest Holders, and holders of Administrative Expense Claims and Priority Claims of the Estates as classified in the Plan. The Plan specifies and determines the treatment of all Claims against the Estate and Interests in the Debtor of whatever character, whether contingent or liquidated, and whether allowed by the Court pursuant to § 502(h) of the Bankruptcy Code. However, only those Claims that are or become Allowed Claims under the Plan will receive any distribution in accordance with the terms of the Plan. Interest holders will not receive any distributions under the Plan.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

FIRST AMENDED PLAN OF REORGANIZATION- 13

**Section 4.1** *Unclassified*

**Section 4.1.1** *Treatment of Administrative Expense Claims*

Allowed Claims for Administrative Expenses shall be paid in full on the later of (1) the Effective Date (or as soon thereafter as reasonably practicable, but in no event later than 30 days after the Effective Date), (2) the date on which such Claim becomes an Allowed Claim (or as soon thereafter as reasonably practicable, but in no event later than 30 days after such Claim is Allowed), (3) the date that payment of such Allowed Claim is due under ordinary business terms, or (4) as agreed between the Debtor and the holder of any Administrative Expense Claim. **Administrative Claims are Unimpaired, and the holders thereof are not entitled to vote on the Plan.**

**Section 4.1.2** *Treatment of Priority Claims*

The Holders of the Priority Claims shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claims: (A) the amount of their unpaid Allowed Priority Claims in cash within thirty (30) days after the later of (i) the Effective Date, or (ii) the date on which such Claim becomes Allowed, which is a period not exceeding five (5) years after the assessment of the tax on which such Allowed Claim is based, totaling the principle amount of such Claim plus simple interest on any outstanding balance from the Effective Date calculated pursuant to 11 U.S.C. § 511; or (B) such other treatment on such other terms and conditions as may be agreed upon in writing by the holder of any such Allowed Claim and the Debtor or the Reorganized Debtor, as the case may be, or as the Court may order. The Debtor or the Reorganized Debtor shall have the right, in its sole discretion to prepay in full or in part, at any time, any Allowed Priority Claim without premium or penalty. **Priority Claims are Unimpaired and are not entitled to vote on the Plan.**

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

**Section 4.2** *Classified Claims*

**Section 4.2.1** *Treatment of Class 1 – TAGJET, LLC*

TAGJET, LLC is the sole holder of the Allowed Class 1 Claim. The Class 1 secured claim of TAGJET, LLC shall be paid in the ordinary course of the Debtor's business in accordance with the terms and conditions of the TAGJET, LLC Loan Agreement. TAGJET, LLC shall retain its security interest in all collateralized intellectual property under its perfected security agreement. **The Allowed Class 1 Claim is Unimpaired and is conclusively deemed to have accepted the Plan pursuant to section 1129(f) of the Bankruptcy Code; therefore, this Class is not entitled to vote on the Plan.**

**Section 4.2.2** *Treatment of Class 2 – Berkshire Bank*

Berkshire Bank is the sole Holder of the Allowed Class 2 Claim. The Class secured claim of Berkshire Bank shall be paid in the ordinary course of the Debtor's business in accordance with the term and conditions of the Berkshire Bank Loan Documents. Berkshire Bank shall retain its security interest in the Debtor's 2001 Cirrus Design SR-22 Aircraft. The Aircraft has been sold and Berkshire Bank's allowed claim has been paid in full, subject to Bankruptcy Court approve of sale and distribution of sale proceeds. Berkshire Bank shall be deem paid in full and its claims fully satisfied with the Aircraft sale proceeds once approved by the Court. **The Allowed Class 2 Claim is Impaired, and Berkshire Bank is entitled to vote to accept or reject the Plan.**

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

**Section 4.2.3**     *Treatment of Class 3 – DH Aeronautics Notes 1 and 2.*

The Class 3 unsecured claims of DH Aeronautics shall receive on account of its Allowed Claims in full satisfaction, release, and discharge of such Claims, the full amount of such allowed claims associated and arising from Notes 1 and 2 in the estimated amount of $5,304,718.00. The Allowed Claim of Class 3 shall become a secured claim by specific assets of the Debtor and paid over a period of eight years, with interest.  The Allowed Class 3 claims shall be memorialized by a secured consolidated promissory note detailed in Exhibit "A" hereto and incorporated herein. The material terms are summarized as follows:

a. Initially, interest at 5.25% per annum, payable annually.

b. Interest only payable on the first and second anniversaries of the Effective Date of the Plan;

c. Beginning after the second anniversary of the Effective Date, interest will increase to 7.00% per annum;

d. On the third through eighth anniversaries of the Effective Date, the Debtor shall pay equal annual installments of principle and interest. There will be no pre-payment penalty for earlier payments on the secured consolidated promissory note.  The Maturity Date will coincide with the eighth anniversary of the Effective Date.

e. In the event of default in payment of the obligations under the secured consolidated promissory note, and if not cured within 30 days, the default interest rate shall be 10% per annum on all unpaid principle. If not cured within 30 days, the DH Aeronautics shall have the right to exercise state law remedies to foreclose upon the

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

collateral which secures the debt obligation.

    f. The secured consolidated promissory note payment obligation shall be secured by specific intellectual property assets of the Debtor as detailed in Exhibit "A".

**The Class 3 Claims are impaired and entitled to vote to accept or reject the Plan.**

      **Section 4.2.4**      *Treatment of Class 4 – General Unsecured Claims*

The Holders of all Allowed Class 4 Claims shall receive, on account of their Allowed Class 4 Claims, in full satisfaction, release and discharge of such Claims, the full amount of such unpaid Allowed Claim. Payment of such Claims shall be made (1) on the Effective Date (or as soon thereafter as reasonably practicable, but in no event later than 30 days after the Effective Date), (2) on the date on which such Claim becomes an Allowed Claim (or as soon thereafter as reasonably practicable, but in no event later than 30 days after such Claim is Allowed), (3) the date that payment of such Allowed Claim is due under ordinary business terms, or (4) as agreed between the Debtor and the holder of any General Unsecured Claims. **Class 4 Claims are Unimpaired and are conclusively deemed to have accepted the Plan pursuant to section 1129(f) of the Bankruptcy Code; therefore, this Class is not entitled to vote on the Plan.**

      **Section 4.2.5**      *Treatment of Class 5 – Wrongful Death Claims*

The holders of the Allowed Class 5 Claims shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claims, the full amount of such Allowed Claims, to the extent of insurance coverage and policy proceeds available to pay said claims. Class 5 shall not receive any other form of payment under the Plan or from the Debtor. All Class 5 claims shall be prosecuted and

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

litigated against Tamarack before the United States District Court for the Eastern District of Washington in accordance with prior Order Granting Relief From Stay and Denying Motion for Waiver of FRBP 4001(a)(3) (ECF No. 98) and Order Designating Venue for Wrongful Death Claims Pursuant to 28 U.S.C. §157(b)(5) (ECF No. 147). **Class 5 Claims are Impaired and are entitled to vote to accept or reject the Plan.**

    **Section 4.2.6**      *Treatment of Class 6 – Warranty and Grounding Claims.*

    The Holders of all Allowed Class 6 Warranty and Grounding Claims shall receive on account of their Allowed Class 6 Claims, in full satisfaction, release, and discharge of such Claims, the full amount of their Allowed Claim up to the extent of insurance coverage and policy(s) available to pay said Claims.

    To the extent a Class 6 Claim is an allowed claim is covered by applicable insurance policies of Tamarack, Allowed Class 6 Claims shall be paid in full within 60 days after the Claim is allowed. In the event an allowed Class 6 claim is not covered or paid under the Debtor's insurance policies, then the allowed Class 6 claim shall be paid over a period of 36 months in equal quarterly installments, with interest at the rate of 5.25% per annum, until paid in full. **Class 6 Claims are Impaired and are entitled to vote to accept or reject the Plan.**

    **Section 4.2.7**      *Treatment of Class 7 – Nicholas Guida Note.*

    Nicholas Guida the sole holder of the Allowed Class 7 Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, the full amount of such Allowed Claim, with interest. The Allowed Class 7 Claim of Nicholas Guida shall be paid in full, with post-petition interest at 5.25% per annum, within 30 days of the payment in full of Class 3 Claims. Nicholas Guida convertible Note, originally convertible, is no longer convertible to Tamarack stock. **The Class 7**

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

**Claim in Impaired and is entitled to vote to accept or reject the Plan.**

     **Section 4.2.8**    *Treatment of Class 8 – Equity Interests (Shareholders).*

   Class 8 consists of all Shareholder Interest in the Debtor, whether disputed or undisputed, contingent or non-contingent, in existence prior to the entry of the Confirmation Order. All pre-petition and pre-Confirmation Shareholder Interests of the Debtor will be affirmed as of the Confirmation Date. Class 8 Shareholders of the post Confirmation Debtor shall not be entitled to receive any distribution on account of their Interests (shares) until after Classes 1 through 7 holding allowed claims have been paid in full. Furthermore, Class 8 Shareholders may not transfer, sell, or assign their shares without 90 days prior notice to Tamarack. Tamarack shall have the first right of refusal to purchase any such shares. In the event that Tamarack chooses not to exercise this first right of refusal, all other non-selling shareholders shall have a right of first refusal to purchase the offered shares on a pro rata basis. **The Class 8 Interests held are claimed by Insiders of the Debtor and are not entitled to vote to accept or reject the Plan.**

     **Section 4.3**    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

   The Debtor will request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code with respect to any Class of Claims or Interests that rejects, or is deemed to have rejected, the Plan.

//

//

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

## V.    IMPLEMENTATION OF THE PLAN

**Section 5.1**          *Funding and Implementation*

The Debtor's Plan will be funded and Implemented as described below:

*1.      Funded by TAGJET, LLC Loan.* The Debtor will utilize its available operating line of credit, as needed and available, to fund allowed Administrative Claims, Priority Claims, Class 3, Class 4, Class 6, and Class 7 Claims.

*2.      Sale of Property.* The Debtor has sold its 2001 Cirrus Design SR-22 Aircraft to fund payment of the Class 2 allowed claim of Berkshire Bank.  The sale and distribution of proceeds of sale are subject to Bankruptcy Court approval.

*3.      Cash Reserves/Business Operation.* As of September 15, 2019, the Debtor holds the sum in excess of $ 339,068 on deposit with Washington Trust Bank. The money referenced above has been derived through ongoing business operations. The Debtor will dedicate cash reserves and future money derived through business operations to fund, in part, Class 3, 6, and 7 allowed claims.

**Section 5.2**          *Exemption from Certain Transfer Taxes and Recording Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor or to any other person or entity pursuant to the Plan, or any agreement regarding the transfer of title or ownership of any of the Debtor's personal property. recording tax, conveyance fee, sales tax, intangible or similar tax, mortgage tax, stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, securities regulation, or other similar tax, governmental assessment, or regulation.

**Section 5.3**          *Effectuating Documents; Further Transactions*

The Debtor and Reorganized Debtor are authorized to execute, deliver, file, and/or record such contracts, instruments, releases, and other agreements or

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

documents, and take any such actions as each of them may deem necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or to otherwise comply with applicable law.

### Section 5.4 *Further Authorization*

The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

## VI. DISTRIBUTION UNDER THE PLAN

### Section 6.1 *Disbursement Agent*

The Reorganized Debtor, with assistance of counsel, will be the Disbursement Agent under the Plan.

### Section 6.2 *Conditions to Disbursement*

The Disbursement Agent may, as a condition to distribution of funds, require a holder of a Claim to return and cancel instruments respecting such Claim or to execute separate releases of any Claims provided for under the Plan.  Upon receipt of full payment of its Allowed Claim, any secured Creditor shall release its lien and/or effectuate the cancellation of instruments evidencing such lien, and shall cooperate with reasonable requests that it may receive from an escrow or title insurance company to provide confirmation of the payoff amount of its Allowed Claims and its agreement to release of its lien is conditioned only upon payment of its Allowed Claim.

### Section 6.3 *Administrative / Priority Claims Distribution*

All Allowed Administrative Expense Claims and Priority Claims shall be paid in full in accordance with Article IV hereof.  To the extent Administrative Expense

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

Claims and Priority Claims are asserted against the Debtor prior to the Effective Date but have not been allowed as of the Effective Date, sufficient funds shall be reserved to pay said Claims in the amount stated on the proof of claim or application for approval of the Claim.

## Section 6.4 *Classified Claims Distribution*

### Section 6.4.1 *Class 1 Claim*

The Allowed Class 1 Claim of TAGJET, LLC shall be paid in accordance with the terms and conditions of its Loan Agreement.

### Section 6.4.2 *Class 2 Claim*

The Allowed Class 2 Claim of Berkshire Bank shall continue to be paid monthly in accordance with the Loan Agreement. The 2001 Cirrus Design SR-22 Aircraft has been sold, subject to Bankruptcy Court approval. Upon Bankruptcy Court approval of sale, Berkshire Bank shall be paid in full.

### Section 6.4.3 *Class 3 Claim*

The Allowed Class 3 Claim shall become secured and paid overtime as described in and in accordance with Article IV hereof.

### Section 6.4.4 *Class 4 Claims*

The Class 4 Claims of General Unsecured Creditors shall be paid in accordance with Article IV hereof. Distributions to holders of Class 4 Claims shall be made after Administrative Expense Claims and Priority Claims have been paid in full. Class 4 Claims shall be paid with funds available within 30 days of the Effective Date.

### Section 6.4.5 *Class 5 Claims*

The Class 5 Claims Wrongful Death Claims, to the extent allowed, shall be paid in accordance with insurance policy proceeds.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

### Section 6.4.6      *Class 6 Claims*

The Class 6 Claims known as Warranty and Grounding claims shall be paid in full and in accordance to the extent Allowed, shall be paid in accordance with Article IV hereof. To the extent covered by insurance. Class 6 claims will be paid in full with insurance policy proceeds. To the extent not covered by insurance, Class 6 shall be paid in full, with interest over 36 months.

### Section 6.4.7      *Class 7 Claim*

The Class 7 Claim of Nicholas Guida is allowed and shall be paid in accordance with Article IV hereof.

### Section 6.4.8      *Class 8*

The holders of Interests in the Debtor shall not receive any distribution under the Plan. However, such person or entity shall retain their Interest in the Reorganized Debtor.

### Section 6.5      *Distributions of Cash*

Any distribution of cash made by the Reorganized Debtor pursuant to the Plan shall, at the Reorganized Debtor's option, be made by check, drawn on a domestic bank, or by wire transfer from a domestic bank.

### Section 6.6      *Delivery of Distributions*

The distribution to any holder of an Allowed Claim shall be made by the Disbursement Agent: (i) at the address set forth on the proof of claim filed by such holder; (ii) at the address set forth in any written notices of address change delivered to the Debtor or Reorganized Debtor after the date of any related proof of claim; (iii) at the address reflected in the Schedules if no proof of claim has been filed and the Debtor or Reorganized Debtor has not received a written notice of change of address; (iv) if the holder's address is not listed in the Schedules, at the last known address of

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

19-01492-FPC11    Doc 171    Filed 12/31/19    Entered 12/31/19 08:45:51    Pg 23 of 38

such holder according to the Debtor's books and records; or (v) if any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtor is notified of such holder's current address, at which time all missed distributions will be made to such holder without interest. All distributions returned to the Reorganized Debtor and not claimed within six (6) months of return shall be irrevocably retained by the Reorganized Debtor notwithstanding any federal or state escheat laws to the contrary. Upon such reversion, the Claim of any holder or such holder's successors, with respect to such property, shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

**Section 6.7** *Unclaimed Funds and Interests*

For a period of two (2) months from the date of the disbursement, the Plan Disbursement Agent shall retain any distribution hereunder which remains unclaimed. Thereafter, the Claims giving rise to the right to distribution of such unclaimed funds will be deemed disallowed and any unclaimed funds, net of expenses, will be redistributed pro rata to the remaining Creditors, except that (i) no redistribution will be made to any creditor whose pro rata share of the funds to be distributed does not exceed $50, and (ii) no further distribution shall be made if the total amount of unclaimed funds does not exceed $500 plus the costs of distribution. If the amount of unclaimed funds does not exceed $500 plus the costs of distribution, such funds will be retained by the Plan Disbursement Agent as reimbursement for expenses in administering such unclaimed funds.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

# VII. PROVISIONS REGARDING CORPORATE GOVERNANCE OF REORGANIZED DEBTOR

**Section 7.1** *Post-Petition Professionals and Management*

**Section 7.1.1** *The Debtor*

The Debtor will continue to operate and conduct its business affairs pending its reorganization as the Debtor-in-Possession. The Debtor shall have the full and complete authority to implement and consummate the provisions of this Plan.

**Section 7.1.2** *The Reorganized Debtor/Management.*

Except as otherwise expressly provided in the Plan, in the Confirmation Order, Loan Documents, and Security Documents/Interests on the Effective Date, the Reorganized Debtor will be vested with all the property of the Estate free and clear of all Claims, liens, encumbrances, charges, and other interests of Creditors and claimants. As of the Effective Date, the Reorganized Debtor may hold, use, dispose, and otherwise deal with such property and conduct its affairs, free of any restrictions imposed by the Bankruptcy Code or by the Court, other than those restrictions expressly imposed by the Plan, the Confirmation Order, Loan Documents, or the documents necessary or required as part of the implementation of the Plan. On and after the Effective Date, the Reorganized Debtor shall be free to operate without supervision by the Court or the consent of any person or entity.

Post Confirmation the Debtor shall be managed by the Leadership Team of:

- Nicholas Guida – Chief Executive Officer/Founder/Chairman of the Board
- Jacob Klinginsmith – President
- Danny Hiner – Chief Operating Office
- Lisa Kassa – Treasurer/Controller

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

The Board of Directors Officers shall be :
- ▪ Nicholas Guida, Chairman of The Board
- ▪ Justin Ryan, Vice-Chairman of the Board
- ▪ Jere Kovach, Secretary of the Board
- ▪ John McCann
- ▪ John Snedden
- ▪ Ian Bannister
- ▪ David Cox
- ▪ David McClenahan
- ▪ Jacob Klinginsmith

The Board of Directors and Leadership Team shall remain in place for at least one year from the Effective Date. The next annual Shareholders' meeting shall not be held until one year after the Effective Date.

### Section 7.1.3 *Professionals*

The Reorganized Debtor shall retain the following professionals post-Confirmation:
- • Munding, P.S. – Attorneys
- • Moss Adams, LLP – Accountants
- • Lee & Hayes, P.C. – Intellectual Property
- • Pivot Consulting Associates - Consulting

To the extent professionals are required to sell the Debtor's intellectual property, the Debtor may employ such persons or entities without further Court approval.

### Section 7.1.4 *Payment of Professionals*

Pre-Effective Date professional fees and expenses shall be paid based upon their Allowed Claims or fees approved by Court Order. Post-Effective Date professional fees and expenses shall be paid directly by the Reorganized Debtor from available Assets. As of the date of filing of the Plan, the Estate has not paid professional fees and expenses. As of the date of filing of the Plan, the Debtor anticipates or has accrued the following professional fees and expenses for which

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

authorization for payment will be sought:

- Munding, P.S. - $138,500.00
- Moss Adams, LLP - $10,000.00
- Lee & Hayes, P.C. - $100,000.00
- Pivot Consulting Assoc. - $34,000.00

**Section 7.2**         *Administrative Claims Bar Date*

Unless otherwise agreed by the Debtor, all requests for payment of Administrative Expense Claims other than current obligations must be served and filed with the Court no later than thirty (30) days after the Effective Date. Except as otherwise allowed by the Court, any Administrative Expense Claim that is not served and filed by such date will be forever barred. After approval of the final fee application of the Chapter 11 professionals by the Court for services provided and costs incurred during the course of administration of the Chapter 11 Case, the Chapter 11 professionals will be required to submit further fee applications to the Court pending final consummation of the Plan.

## VIII. PROCEDURES FOR TREATING/RESOLVING DISPUTED CLAIMS

**Section 8.1**         *Objections to Claims*

The Reorganized Debtor shall be entitled to object to Claims, provided however, that the Debtor and Reorganized Debtor shall not be entitled to object to claims (i) that have been allowed by a Final Order entered by the Court prior to the Effective Date, or (ii) that are Allowed by the express terms of the Plan. Any objections to Claims must be filed by the Effective Date, unless such deadline is extended by the Court for cause (the "Claims Objection Deadline").

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

**Section 8.2**     *No Distributions Pending Allowance*

Except as otherwise provided herein, no distributions will be made with respect to any portion of a Claim unless and until (i) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn, or overruled, pursuant to a Final Order of the Court.

**Section 8.3**     *Estimation of Claims*

The Debtor or the Reorganized Debtor, as the case may be, may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502 of the Bankruptcy Code regardless of whether the Debtor or Reorganized Debtor has previously objected to such Claim or whether the Court has ruled on any such objection.  The Court will retain jurisdiction to estimate any Claim at any time during litigation concerning an objection to any Claim, including during the pendency of any appeal relating to any such objection.  If the Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed Claim or the maximum cap of such claim, as determined by the Court.  If the estimated amount constitutes a maximum cap on such Claim, the Debtor or Reorganized Debtor may elect to pursue any supplemental proceeding to object to any ultimate payment on such Claim.

**Section 8.4**     *Resolution of Claims Objections*

On or after the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to claims without approval of the Court.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

# IX. DISALLOWED CLAIMS AND DISALLOWED INTERESTS

The filing of the Plan and its submission to persons or entities holding Claims shall constitute an objection to all Claims that are not allowed under section 502 of the Bankruptcy Code. On and after the Effective Date, the Debtor and the Reorganized Debtor will be fully and finally released from any obligation on any holder of a disallowed Claim. The Confirmation Order, except as otherwise provided herein, shall constitute a Final Order: (i) disallowing all Claims to the extent such Claims are not allowable under any provision of sections 105 or 502 of the Bankruptcy Code, including time-barred Claims and (ii) disallowing or subordinating any Claims for equitable reasons.

# X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 10.1** *Pre-Petition Contracts and Leases*

All the Loan Documents shall be **deemed assumed** by the Reorganized Debtor. All other unexpired leases and Executory Contracts shall be **deemed rejected** by the Debtor as of the Effective Date, <u>except</u> unexpired leases or Executory Contracts or identified by the Debtor:

- Lease
  - KSZT LLC Lease dated May 1, 2018; Commencing on July1, 2018 for a term of 7 years expiring on July 1, 2025; Leased property is 2021 & 1939 Industrial Drive, Sandpoint, ID 83864.

- Deposit Agreements
  - Order Deposit Contract: Industrial Smoke and Mirrors Inc. Attn.: Andrew Garvis; Dated October 2, 2013; $5,000.
  - Order Deposit Contract: Dolphin Capital Holdings, Inc. Attn: Steven S. Myers; Dated July 2, 2015; $13,600.
  - CJP Show Special Pricing Deposit Agreement; Nascosto

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

Services LLC, Attn: Ryan Samples; Dated September 14, 2015; $10,000.

- o CJP Show Special Pricing Deposit Agreement: KP Equipment, Attn: Larry Pribyl; Dated September 14, 2015; $10,000.
- o CJP Show Special Pricing Deposit Agreement: Alpha Juliet Consulting, LLC on behalf of AJ Capital Holding, LLC, Attn: Alex Gutierrez, Dated September 18, 2015: $10,000.
- o Order Deposit Contract: Hotel Alpha LLC, Attn: William Hettinger; Dated October 5, 2015; $10,000.

These contracts and leases are assumed on the Effective Date as part of this Plan to the extent they are not assumed by prior order. All the TAGJET, LLC Loan Documents shall be **deemed assumed** by the Reorganized Debtor. Any Claims filed pursuant to a rejected pre-petition Executory Contract shall be subject to objection by the Debtor and to consideration by the Court. If any such Claim becomes an Allowed Claim, it shall be a General Unsecured Claim.

Upon entry of the Confirmation Order and all defaults under such assumed Executory Contracts and unexpired leases shall be deemed to have been and the Debtor / Reorganized Debtor shall be deemed to have provided adequate assurance of future performance under the terms of the Plan.

**Section 10.2**      *Post-Petition Contracts and Leases*

All post-petition leases and Executory Contracts are assumed as of the Effective Date.

## XI.   CONTINUED PROSECUTION OF LITIGATION

Post-Confirmation, the Reorganized Debtor shall be authorized to continue, pursue, and resolve any and all legal claims and Causes of Action.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

## XII.  EFFECT OF PLAN ON CLAIMS AND INTERESTS

### Section 12.1 *Revesting of Assets*

Except as otherwise expressly provided in the Plan, on the Effective Date the Reorganized Debtor will be vested with all the property of the Estate, subject to the Allowed Claims of Creditors determined by agreement or Final Order to hold secured Claims against Assets, which includes, for avoidance of doubt, TAGJET, LLC, and Berkshire Bank. As of the Effective Date, the Reorganized Debtor may hold, use, dispose, and otherwise deal with such property and conduct its affairs, subject to restrictions imposed by the Bankruptcy Code, the Court, the Plan, the Confirmation Order, or the other documents entered into in connection with the Plan.

### Section 12.2 *Discharge of the Debtor*

In accordance with section 1141(d)(1) of the Bankruptcy Code, entry of the Confirmation Order shall provide the Reorganized Debtor with a discharge of any Claim against the Debtor, including:  (i) any Claim of any kind that arose at any time before the entry of the Confirmation Order; and (ii) any Claim of any kind described in section 502(g) of the Bankruptcy Code.  Following entry of the Confirmation Order, every holder of a Claim or Interest shall be precluded from asserting against the Debtor, the Reorganized Debtor, and/or any of the Debtor's assets, any further Claim or Interest based upon any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, except as provided in the Plan.

### Section 12.3 *Release*

The Debtor and its members, officers, employees, agents, attorneys, financial advisors, other professionals, and the Disbursement Agent as agents of the Debtor shall not be liable to any claimant or other party with respect to any action,

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464

forbearance from action, decision, or exercise of discretion taken during the period from the date appointed until the Effective Date in connection with: (i) the implementation of any of the transactions provided for or contemplated in the Plan; or (ii) the administration of the Plan or the assets and property to be distributed pursuant to the Plan, other than for willful misconduct, gross negligence or breach of the Debtor's, the Reorganized Debtor's or the Agent's obligations under the Plan. Nothing in this paragraph is intended to or shall modify the rights of claimants that have direct claims against such persons, whether by guaranty or other contract, and nothing herein shall impair or modify the rights of non-Debtor persons or entities with respect to other non-Debtor persons or entities. The Order closing this case shall provide for a release of the Debtor's representatives, management, and all professionals employed by the Estate from any liability associated with the performance of duties to the Estate, except for any liability arising from the gross negligence, willful misconduct or breach of the Debtor's, the Reorganized Debtor's or the Agent's obligations under the Plan.

**Section 12.4**      *Set-offs*

The Debtor may, but is not be required to, set-off against any Claim, and the payments or other distributions to be made on that Claim pursuant to the Plan, claims of any nature whatsoever that the Debtor may have against such holder. Notwithstanding anything to the contrary, neither the failure to set-off against a Claim nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim it may have against such holder.

**Section 12.5**      *The Effective Date*

**Section 12.5.1**      *Binding Effect*

On the Effective Date, the provisions of the Plan shall be binding on the Debtor,

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

the Reorganized Debtor, the Estate, all holders of Claims against and Interests in the Debtor and the Estate, and all other parties-in-interest whether such parties hold Impaired and whether such parties have accepted the Plan.

### Section 12.5.2     *Effect on Automatic Stay*

Except as provided otherwise in the Plan, on the Effective Date, the automatic stay imposed by section 362(a) of the Bankruptcy Code shall terminate.

### Section 12.5.3     *Filing of Reports*

The Reorganized Debtor shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Court.

## XIII. RETENTION OF JURISDICTION

**Section 13.1**     *Retention of Jurisdiction*

Subsequent to the Effective Date, the Court shall have and retain jurisdiction for the following purposes:

- To adjudicate objections concerning the allowance, priority, or classification of Claims or Interests and any subordination thereof, and to establish a date(s) by which objections to Claims must be filed to the extent not established herein;

- To liquidate the amount of any Disputed, contingent, or unliquidated Claim, to estimate the amount of any Disputed, contingent or unliquidated Claim, and to establish the amount required to be withheld from any distribution;

- To resolve all matters related to the rejection, assumption, and/or assignment of any Executory Contract or unexpired lease of the Debtor;

- To hear and rule upon all Causes of Action commenced and/or pursued by the Debtor and/or the Reorganized Debtor with exception of Class 5 Claims;

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

- To hear and rule upon all applications for professional compensation;

- To remedy any defect or omission, or reconcile any inconsistency in the Plan, as may be necessary to carry out the intents and purposes of the Plan;

- To adjudicate controversies arising out of the administration of the Estate or implementation of the Plan;

- To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the distribution of funds from the Estate and the payment of Claims;

- To determine such other matters as may be provided for in the Plan or the Confirmation Order as may be authorized by or under the provisions of the Bankruptcy Code;

- To determine any controversies, actions, or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any person or entity under the provisions of the Plan; and

- To enter a final decree.

**Section 13.2**     *Alternative Jurisdiction*

If the Court is found to lack jurisdiction to resolve any matter, then the United States District Court for the Eastern District of Washington shall hear and determine such matter. If the United States District Court for the Eastern District of Washington does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

**Section 13.3**     *Substantial Consummation*

The Plan shall be deemed substantially consummated upon the filing of a final report and request for final Order by the Reorganized Debtor through counsel certifying that substantially all duties imposed upon the Reorganized Debtor under the Plan have been completed.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

**Section 13.4** *Final Decree*

The Court may, upon application of the Reorganized Debtor, at any time on or after the Effective Date, enter a final decree in this case. In such event, the Court may enter an Order closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code, <u>provided</u>, <u>however</u>, that: (i) the Reorganized Debtor shall continue to have the rights, powers, and duties set forth in the Plan; (ii) any provision of the Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Court; and (iii) the Court may from time to time reopen the Chapter 11 Case if appropriate for any of the following purposes: (a) administering Assets; (b) entertaining any adversary proceedings, contested matters, or applications the Debtor brought or will bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (c) enforcing or interpreting the Plan or supervising its implementation; or (d) allowing for the entry of an Order of Discharge upon completion of Plan payments.

## XIV. MISCELLANEOUS PROVISIONS

**Section 14.1** *Modification of the Plan*

The Debtor may modify the Plan pursuant to section 1127 of the Bankruptcy Code and as herein provided, to the extent allowed by law. Subject to the limitations contained herein, the Debtor may modify the Plan in accordance with this paragraph, before or after Confirmation, without notice or hearing, or after such notice and hearing as the Court deems appropriate, if the Court finds that the modification does not materially and adversely affect the rights of any parties-in-interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before Confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Court finds that

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

the modifications materially and adversely affect the rights of parties-in-interest which have cast said votes. The Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

**Section 14.2** *Allocation of Plan Distributions Between Principal and Interest*

To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued, but unpaid, interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**Section 14.3** *Applicable Law*

Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by the laws of the State of Washington.

**Section 14.4** *Preparation of Estate's Returns and Resolution of Tax Claims*

The Debtor or Reorganized Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

**Section 14.5** *Headings*

The headings of the Articles and sections of the Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

**Section 14.6**       *Revocation of the Plan*

The Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw the Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal, the Plan shall be deemed null and void and of no force and effect.

**Section 14.7**       *Severability of Plan Provisions*

If, prior to entry of the Confirmation Order, any term or provision of the Plan is held by the Court to be illegal, unenforceable, impermissible, invalid, void, or otherwise constitute grounds for denying Confirmation of the Plan, the Court shall have the power to interpret, modify, or delete such term or provision (or portions thereof) to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be illegal, unenforceable, impermissible, invalid, or void, and such term shall then be operative as interpreted, modified, or deleted. Notwithstanding any such interpretation, modification, or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired, or invalidated by such interpretation, modification, or deletion.

**Section 14.8**       *No Bar to Suits*

Except as otherwise provided in the Plan, neither the Plan nor Confirmation hereof shall operate to prevent the Debtor or Reorganized Debtor from commencing any legal action against any holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other legal entity, whether such legal action arose prior to or after the Confirmation Date, whether or not the existence of such legal action was disclosed in the Disclosure Statement filed by the Debtor in connection with the Plan, and/or whether or not any payment was made or is made on

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

account of any Claim.

**Section 14.9**        *Conflicts*

If provisions of the Disclosure Statement and provisions of the Plan conflict, the terms of the Plan shall govern.

**Section 14.10**        *Notice*

Notice, requests, and demands for payment shall be addressed and sent postage prepaid or delivered to the undersigned counsel for the Debtor.


**Section 14.11**        *Default*

Any Creditor may notify the Disbursement Agent in writing of a default under the Plan.  In the event written notice of a default is transmitted to the Disbursement Agent, the Disbursement Agent or any party in interest will have thirty (30) days to cure the alleged default.  Absent cure or a prior order granting that party relief, the aggrieved party may seek relief from the Court.

The Plan has been approved for submission to the Court on this 31st day of December 2019.

Submitted By:        MUNDING, P.S.


*/s/ John D. Munding*
JOHN D. MUNDING, WSBA #21734
Attorney for Tamarack Aerospace Group, Inc.

Approved by:

/s/ Jacob Klinginsmith
President, Tamarack Aerospace Group, Inc.

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA  99218
(509) 624-6464