JOHN D. MUNDING (WSBA #21734)
MUNDING P.S.
9425 N Nevada St., Ste 212
Spokane, WA 99218
john@mundinglaw.com
(509) 624-6464

*Attorney for Debtor*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

In re:

**TAMARACK AEROSPACE GROUP, INC,**

Debtor.

Case No. 19-01492-FPC11

Chapter 11

**DEBTOR'S MODIFICATION OF FIRST AMENDED PLAN OF REORGANIZATION (ECF No. 171) AS TO TREATMENT OF CLASS 3 CLAIMS AND NOTICE THEREOF**

## I. MODIFICATION

Tamarack Aerospace Group, Inc., the debtor and debtor-in-possession in the above captioned case ("Tamarack" or the "Debtor") by and through counsel John D. Munding, Munding P.S., pursuant to Section 1127(a) and 105(a) of the Bankruptcy Code hereby submits the Debtor's modification to the *First Amended Plan of Reorganization* [ECF NO. 171] (the "Plan"). Specifically, the modification to the Plan

MODIFICATION CHAPTER 11 PLAN CLASS 3 TREATMENT

MUNDING, P.S.
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

19-01492-FPC11    Doc 195    Filed 02/21/20    Entered 02/21/20 08:06:24    Pg 1 of 14

pertains only to the treatment of the Class 3 Claims of DH Aeronautics and will support the confirmation of a consensual plan benefiting all classes of claims. Class 3 DH Aeronautics stipulates and agrees to the proposed modification of the Plan.

## II. MODIFICATION TO THE PLAN – CLASS 3

### A. General Background

On June 1, 2019 the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. No Committee of Unsecured Creditors, trustee, or examiner has been appointed in the Debtor's chapter 11 case. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

### B. The Plan

On December 19, 2019, the Court entered the *Order Approving Amended Disclosure Statement for Chapter 11 Plan, Setting Deadlines, and Time for Confirmation Hearing* [ECF No. 169]. On December 31, 2019, the Debtor caused to be filed and subsequently served the Plan and Plan Solicitation Package. [ECF No. 170 and 171]. A confirmation hearing has been set for February 25, 2020 at 10:00 a.m.

The balloting for the Plan is complete. The voting for the Plan was as follows:

- Class One – Deemed to accept the Plan
- Class Two – Deemed to accept the Plan (Paid)

MODIFICATION CHAPTER 11 PLAN CLASS 3 TREATMENT

MUNDING, P.S.
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

19-01492-FPC11    Doc 195    Filed 02/21/20    Entered 02/21/20 08:06:24    Pg 2 of 14

- Class Three – Votes to accept the Plan, subject to modification below
- Class Four – Deemed to accept the Plan
- Class Five – Did not vote
- Class Six – Voted to accept the Plan
- Class Seven – Voted to accept the Plan
- Class Eight – Does not vote.

With approval of the proposed modification below, the Debtor has a consensual Plan upon approval of the proposed Modification.

## C. Modification to the Plan

On January 15, 2020, Class 3 DH Aeronautics and the Debtor participated in an all-day mediation with mediator Ford Elsaesser. After lengthy negotiations, the parties reached an agreement for treatment of Class 3's treatment under the Plan. Based upon the parties' agreement, Class 3's treatment under the Plan is modified as detailed in Exhibit "A" attached hereto and made part hereof (the "Mediated Settlement Agreement") and summarized as follows:

- The Class 3 claim, as provided in the Plan, shall be secured, and collateralized by a second lien on all collateral held by TAGJET, LLC (the "DH Second Lien"). The Debtor, TAGJET, LLC and Class 3 have entered into an intercreditor agreement, a copy of which is attached

MODIFICATION CHAPTER 11 PLAN CLASS 3 TREATMENT

MUNDING, P.S.
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

19-01492-FPC11    Doc 195    Filed 02/21/20    Entered 02/21/20 08:06:24    Pg 3 of 14

hereto and made part hereof as Exhibit "B" (the "Intercreditor Agreement").

- Within 24 months from the Effective Date of the confirmed Plan of Reorganization the Debtor may pay the entire Class 3 allowed claim in full at a reduced payoff amount of 10% of the balance owed as of the date of payment.

- Based upon the terms of the Mediated Settlement Agreement and the Intercreditor Agreement, Class 3 will vote affirmatively for confirmation of the Plan.

Pursuant to Paragraph 5 of the Intercreditor Agreement, (a) Debtor is authorized to borrow up to an additional $3,100,000 for the sole purpose of development of new products (the "New Product Development Loan"); (b) DH Aeronautics has agreed to subordinate the DH Second Lien to the New Product Development Loan; and (c) DH Aeronautics is granted a second lien on the New Collateral (as defined in the Intercreditor Agreement). In addition to the terms as set forth in Mediated Settlement Agreement and the Intercreditor Agreement, in the event that the Debtor determines to borrow some or all of the New Product Development Loan, Debtor must give DH Aeronautics ten (10) days advance written notice of any and each such borrowing. Additionally, Debtor must provide to DH Aeronautics a written detailed list of all such

MODIFICATION CHAPTER 11 PLAN CLASS 3 TREATMENT

**MUNDING, P.S.**
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

19-01492-FPC11    Doc 195    Filed 02/21/20    Entered 02/21/20 08:06:24    Pg 4 of 14

New Collateral within ten (10) days of the Debtor's creation, purchase or other acquisition of such New Collateral.

The Mediated Settlement Agreement has been clarified to include the following language:

> Upon the occurrence of any default under the terms of the Plan, the Plan Modification, the Mediated Settlement Agreement and/or the Intercreditor Agreement (collectively, the "Plan Documents"), and at any time hereafter, DH Aeronautics may declare all of the obligations owed to it by the Debtor under the Plan Documents to be immediately due and payable with full recourse to the assets of the Debtor, and shall have, in addition to any remedies provided in the Plan Documents or by any applicable law or in equity, all of the remedies of a secured party under the UCC. Provided, however, that upon said declaration of default by DH Aeronautics, Debtor shall have ten calendar days from such declaration of default to fully cure any such default, which cure shall include, if applicable, the reasonable attorney's fees and costs associated with the declaration of default.

### D. Modification of the Plan Satisfies Section 1127(A) of the Bankruptcy Code

Prior to confirmation, pursuant to section 1127(a) of the Bankruptcy Code, the Debtor modifies the Plan with respect to Class 3 based upon the terms and conditions set forth above at Section C. The modifications to the Plan are permissible and necessary for consummation of the Plan. Section 1127(a) of the Bankruptcy Code provides as follows:

MODIFICATION CHAPTER 11 PLAN CLASS 3 TREATMENT

MUNDING, P.S.
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

19-01492-FPC11    Doc 195    Filed 02/21/20    Entered 02/21/20 08:06:24    Pg 5 of 14

proponent of a plan may modify such plan at any time before confirmation, but man not modify such plan so that such plan as modified fails to meet the requirements of sections 122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan. 11 U.S.C. §1127(a).

Courts recognize section 1127(a) of the Bankruptcy Code authorizes nonmaterial modifications to a chapter 11 plan by its proponent at any time before confirmation, if the plan, as modified satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code. *See In re Cellular Info. Sys., Inc.,* 171 B.R. 926, 929 n.6 (Bankr. S. D.N.Y. 1994) (holding that "nonmaterial modifications to a plan do not require re-solicitation of the respective impaired classes of creditors or equity security holders"). Only modifications that are "material" require solicitation. *In re Am. Solar King Corp.,* 90 B.R. 808, 823 (Bankr. W. D. Tex. 1988) (modifications to a plan do "not necessarily mandate the preparation of a new disclosure statement and resolicitation of the plan..."). Instead, further disclosure occurs only when and to the extent that the debtor intends to solicit votes from previously dissenting creditors or when the modification materially and adversely impacts parties who voted for the plan. *In re Am. Solar King Corp. Id.*

The modifications of the Plan in this case do not alter the classification of claims or their treatment under the Plan. As such, the modifications do not implicate the

MODIFICATION CHAPTER 11 PLAN CLASS 3 TREATMENT

MUNDING, P.S.
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

19-01492-FPC11    Doc 195    Filed 02/21/20    Entered 02/21/20 08:06:24    Pg 6 of 14

classifications requirements of section 1122 of the Bankruptcy Code. In addition, the modification described above, does not affect compliance with the requirements of section 1123. Accordingly, the modification of the Plan with respect to treatment of Class 3 satisfies the requirements of section 1127(a) of the Bankruptcy Code.

The Debtor's and Class 3's agreed modification to the Plan and treatment of Class 3 allows the Debtor to promptly confirm the Plan and emerge from chapter 11 without resoliciting votes conforms with the fundamental policy behind the Bankruptcy Code.

## II. NOTICE

**TO: THE COURT**

**AND TO: ALL PARTIES IN INTEREST**

**PLEASE TAKE NOTICE** that the Debtor's Modification to the Plan and treatment of Class 3 as described above will be requested to be approved at the Confirmation Hearing on February 27, 2020 at 11:30 a.m.

DATED this 21st day of February 2020.

Presented by:

MUNDING, P.S.

*/s/ John D. Munding*
JOHN D. MUNDING WSBA # 21734
Attorney for Debtor

MODIFICATION CHAPTER 11 PLAN CLASS 3 TREATMENT

MUNDING, P.S.
9425 N NEVADA ST., STE 212
SPOKANE, WA 99218
(509) 624-6464

19-01492-FPC11    Doc 195    Filed 02/21/20    Entered 02/21/20 08:06:24    Pg 7 of 14

## MEDIATED SETTLEMENT AGREEMENT

This Mediated Settlement Agreement is made and entered into on January 15, 2020, by and between Tamarack Aerospace Group, Inc., Chapter 11 Debtor in Possession, Case #19-01492 (Bankr. E.D. Wa) (hereinafter "Debtor"), DH Aeronautics, LLC (hereinafter "Creditor"), and TAGJET, LLC (hereinafter "Lender"), as follows:

1. This mediation concerns the treatment of debt held by Creditor, which Creditor is scheduled as Class 3 under the current Chapter 11 Plan of Reorganization.

2. Per the mediation process, Debtor, Creditor and Lender (together jointly referred to as "Parties") have agreed or consented to the treatment of Class 3.

3. The Class 3 claim, as provided in the Plan, shall be secured, and collateralized by a second lien on all collateral held by Lender. With the consent of Debtor, Lender and Creditor have entered into an intercreditor agreement, the terms of which will be incorporated into the Chapter 11 Plan of Reorganized, scheduled for confirmation on February 25, 2020.

4. Contemporaneously with the mediation, the Parties have negotiated an intercreditor agreement. The Parties agree that Lender's agreement to the intercreditor agreement and this Mediated Settlement Agreement are a pre-condition to this Mediated Settlement Agreement being accepted.

5. If within 24 months from the Effective Dates of the confirmed Plan of Reorganization, Creditor agrees that the total amount due under the Class 3 claim may be discounted by ten percent (10%) of said total amount due on the date of such payment.

6. The Parties agree that except as modified by the terms set forth in this Mediated Settlement Agreement, the Debtor consents to its treatment under Class 3, and upon the terms and conditions of this Mediated Settlement Agreement and the Intercreditor Agreement, referenced, Creditor will vote affirmatively for confirmation of the Plan.

7. By January 22, 2020, the Debtor and Lender shall cause the termination of Idaho UCC File #20195515477 in favor of Bank of Star Valley, of Afton, Wyoming.

8. The parties further agree that should any dispute arise concerning the terms of this Mediated Settlement Agreement, such dispute shall be submitted to the Mediator, Ford Elsaesser, for final decision.

*In re: Tamarack Aerospace Group, Inc.*

By: Jacob Klingaman /s/
Its: President

DH Aeronautics LLC

By: *[signature]*
Its:

*[signature: Nicholas R Genich]*

TAGJET, LLC
By: Authorized Officer or Member

Mediator: *[signature]*

Ford Elsaesser

THIS INTERCREDITOR AGREEMENT ("Agreement") is made and entered into as of the 15th day of January, 2020, by and between TAGJET, LLC ("TAGJET"), and DH Aeronautics LLC ("DH").

## RECITALS

**A.** Each of TAGJET and DH has heretofore extended and/or may hereafter extend certain financial accommodations to Tamarack Aerospace Group, Inc., a Washington Corporation ("Debtor") and, in connection therewith, has heretofore acquired and/or may hereafter acquire security interests in certain property of TAGJET.

**B.** TAGJET and DH desire to establish the relative priority of the security interests held or to be held by each of them in and to all property of Debtor in which they now or hereafter may concurrently hold security interests.

NOW, THEREFORE, for and in consideration of the premises hereof, and other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby agree as follows:

**1. Definitions.** As used herein, "Shared Collateral" shall mean (i) all of the personal property described in Exhibit A attached hereto and made part hereof which is now owned or may hereafter be acquired by Debtor wherever located, and (ii) all identifiable cash proceeds of the personal property of Debtor described in clause (i).

**2. Scope.** This Agreement governs the respective rights and priorities of TAGJET and DH in and to the Shared Collateral. The respective rights and priorities of TAGJET and DH in and to all other property of Debtor and all other related matters not expressly covered herein shall be governed by applicable law.

**3. Subordination by DH** Notwithstanding any contrary provision of the Uniform Commercial Code of the state whose law governs this Agreement ("Commercial Code") or any other applicable law (including, without limitation, provisions governing the time or order of attachment or perfection of security interests or the time or order of filing of UCC-1 financing statements or the giving or failure to give notice of the acquisition of purchase money or other security interests), but subject, nevertheless, to the terms and conditions of this Agreement, the security interest of DH in and to the Shared Collateral shall be, and shall continue to be, subject, subordinate and inferior to the security interest of TAGJET therein.

**4. Enforceability of Security Interests.** TAGJET and DH have entered into this Agreement on the assumption that their respective security interests in the Shared Collateral are valid and enforceable. Each of TAGJET and DH agrees that if the security interest claimed by either of them in all or any portion of the Shared Collateral is not perfected or is avoidable for any reason, such as by a trustee in bankruptcy, then any subordination hereunder of a security interest to the unperfected or avoidable security interest shall not be effective as to that particular portion of the Shared Collateral.

**5. Additional Advances.** The parties agree that the Debtor may borrow up to an additional $3,100,000 solely for the purpose of the development of new products (the "New Product Development Loan"), and not for any other purpose of use, including but not limited to the payment of operating expenses of the Debtor or the funding of the Debtor's obligations under its Plan (defined hereinafter). In the event that the Debtor borrows funds that constitute a New Product Development Loan, DH agrees that the subordination of its rights as provided for herein shall be effective as to the New Product Development Loan; provided, however, that DH shall be granted, by the terms of this agreement, a second lien on all assets of the Debtor that are created, purchased, or otherwise acquired with the New

-1-

106851345.v2

# EXHIBIT B

Product Development Loan (the "New Collateral"), subject and inferior only to the first lien of the party making the New Product Development Loan, which party may be TAGJET.

6. **Duties of the Parties.** If either TAGJET or DH takes possession of any of the property of Debtor in which either of them holds a security interest, or realizes the proceeds therefrom in accordance with the terms of any security agreement, then the party so taking possession of such property or realizing the proceeds therefrom shall hold such property or such proceeds, as the case may be, for the benefit of the party entitled thereto as provided in this Agreement.

7. **Request for Notice.** This Agreement constitutes a written request from each party to the other party for notice of the time and place of any public sale of any of the Shared Collateral or for notice of the time on or after which any private sale or other intended disposition of any of the Shared Collateral is to be made, and the agreement of both TAGJET and DH to provide such notices to the other party.

8. **Miscellaneous.**

8.1 This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. This Agreement shall be governed by and construed in accordance with the laws of the State of Washington.

8.2 Unless the context otherwise requires, all terms used herein which are defined in the Commercial Code shall have the meanings therein stated.

8.3 If suit is brought to enforce any provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs in addition to any other remedy or recovery awarded by the court.

8.4 Any forbearance or failure or delay by either party hereto in exercising any right, power or remedy hereunder shall not be considered a waiver thereof and any single or partial exercise thereof shall not preclude any further exercise thereof.

8.5 TAGJET and DH will, upon the request of the other party hereto, execute and deliver to the requesting party such further documents, including, without limitation, financing statement changes, as are reasonably necessary or desirable to evidence the subject matter of this Agreement.

8.6 This agreement shall be attached as an exhibit to the Amended Plan of Reorganization of the Debtor (the "Plan"), to be filed in its pending Chapter 11 case, Case No. 19-04192, pending before the United States Bankruptcy Court for the Eastern District of Washington, and the terms hereof shall be incorporated into the terms of the Plan.

8.7 This Agreement contains the entire agreement of the parties hereto with respect to the subject matter hereof and may not be modified or terminated except by a writing signed by both of such parties. Nothing contained herein shall be deemed to affect in any way any agreement which either such party may have with any person or entity who is not a party hereto, including, but not by way of limitation, Debtor, or to grant any right, benefit, priority or interest to any such person or entity. This Agreement shall not be deemed an agreement by either party hereto not to finance or not to take a security interest in any assets of Debtor, nor shall it be deemed to be an agreement to make or continue any financial accommodations to Debtor.

8.8 Any notice or other communication provided for or allowed hereunder shall be given by one of the following methods, addressed to the respective party at its address provided on the signature page hereof (or at such other address as the party changing its address shall notify the other as provided herein), and shall be considered effective (i) upon delivery, if delivered personally, (ii) upon receipt, if mailed, first class postage prepaid, with the United States Postal Service, (iii) on the next business day, if sent by overnight courier service of recognized standing, and (iv) upon telephoned confirmation of receipt, if telecopied.

8.9    Disputes. To the extent permitted by law, in connection with any claim, cause of action, proceeding or other dispute concerning this Agreement (each a "Claim"), the parties to this Agreement expressly, intentionally, and deliberately waive any right each may otherwise have to trial by jury.

8.10   Nondisparagement.

DH agrees that its member will not make any statements, verbally or in writing, about TAGJET and/or its members, and/or Debtor and/or its officers, directors, employees or agents in any manner that calls into question their morality, integrity, conduct, business ability, or business judgment; provided that DH and its member will respond accurately to any question, inquiry or request for information when required by legal process.

TAGJET agrees that its members will not make any statements, verbally or in writing, about DH and/or its member, employees or agents in any manner that calls into question their morality, integrity, conduct, business ability, or business judgment; provided that TAGJET and its members will respond accurately to any question, inquiry or request for information when required by legal process.

Debtor agrees that its officers and directors will not make any statements, verbally or in writing, about DH and/or its member, employees or agents in any manner that calls into question their morality, integrity, conduct, business ability, or business judgment; provided that Debtor and its officers and directors will respond accurately to any question, inquiry or request for information when required by legal process.

8.11   This Agreement may be executed in identical original counterparts, each of which shall be deemed an original and taken together shall constitute one and the same agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**TAGJET:**
TAGJET, LLC
By: *(signature)*
Name: NICHOLAS GUIDA
Title: MANAGER

**ADDRESS FOR NOTICE TO TAGJET:**
TAGJET, LLC
16 Ponderosa Place
PO Box 7063
Star Valley Ranch, Wyoming 83127
Attn: Jere Kovach
Telephone: (307)248-3029
Facsimile: None

DH: *(signature)*
By *(signature)*
Gary Heavin, Manager

**ADDRESS FOR NOTICE TO DH:**
DH Aeronautics LLC
875 County Road 324
Gatesville, Texas 76528
Attn: Gary Heavin
Telephone: (2549722-8122
Facsimile: None

19-01492-FPC11    Doc 195    Filed 02/21/20    Entered 02/21/20 08:06:24    Pg 12 of 14

## DEBTOR'S CONSENT

Consented to and acknowledged this 15th day of January, 2020:

By its execution of this consent, Debtor, although not a party to this Agreement, (i) consents to the terms and conditions hereinabove set forth, including the nondisparagement provision (ii) grants to DH a second lien on the New Collateral (as described in Paragraph 5 hereinabove), and (iii) acknowledges and agrees that a default under any of Debtor's obligations to either TAGJET or DH shall also constitute a default under Debtor's obligations to the other, and shall entitle both TAGJET and DH to take any and all actions and exercise any and all remedies which either TAGJET or DH is authorized to take or exercise upon the occurrence of a default.

Debtor: *Tamarack Aerospace Group Inc*
By _[signature]_
Its _President_

106851345.v2

-4-

# EXHIBIT A

# Description of Shared Collateral.

All General Intangibles, including, without limitation, United States Patent 7,900,877 (Active winglet), United States Patent 8,684,315 (Active winglet), United States Patent 9,162,755 (Multiple controllable airflow modification devices), and United States Patent 9,567,066 (Controllable airflow modification device periodic load control), and all additions, accessions, modifications, improvements, replacements and substitutions thereto and therefor, whether now owned or hereafter acquired or arising, and wherever located, and the proceeds, products and income of any of the foregoing, including insurance proceeds, and the ATLAS modification that is EASA and FAA approved for the Citation Jet 525, 525A, and 525B and the exclusive commercial rights to this STC which is held by Cranfield Aerospace Solutions Ltd. and will be transferred to Tamarack Aerospace Group, Inc. in 2019.